IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-30246 |
| Bourbon Street LLC, | ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. | ) | |
| | ) | |
| Debtors, Jointly Administered. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| Gannett Peak, LLC | ) | |
| | ) | Adversary Case No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MicroAdvance Funding, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**<u>COMPLAINT</u>**

Comes now Gannett Peak, LLC ("Gannett Peak" or the "Debtor"), by and through undersigned counsel, pursuant to <u>Federal Rule of Bankruptcy Procedure 7003</u> and <u>Federal Rule of Civil Procedure 3</u>, and as and for its complaint (the "Complaint") against MicroAdvance Funding, LLC ("MAFL" or the "Defendant") states as follows:

**Introduction**

1.      On July 17, 2023, MAFL agreed to send $33,450.00 to the Debtor, in exchange for the Debtor agreeing to pay MAFL $47,250.00 over a period of approximately 36 weeks. At first blush, this would appear to be a loan with an annual interest rate of 59.5%. But MAFL confidently asserts the transaction is not a loan, as evidenced by the words "THIS IS NOT A LOAN" appearing in oversized font, in uniformly-capitalized letters, at the top of the second page of the underlying agreement (the "Agreement").

1

2.     The aggressive disclaimer is neither coincidence nor folly; the transaction in question is a so-called "merchant cash advance" (an "MCA"), a variety of commercial funding that has come into vogue of late, proving every bit as toxic to small businesses as so-called payday loans have become to consumers.

3.     The theory of an MCA is relatively simple: the funds being tendered to a small business are not a loan (which would implicate uncomfortable questions about the application of various states' usury laws) but, rather, the proceeds of an advanced purchase of future receivables.

4.     An MCA has nearly every optical resemblance to a loan – including, in many cases (such as the one *sub judice*), a security agreement and personal guaranty – but, per the governing document's express terms, is instead characterized as a simple sales transaction.

5.     Notably, MCA agreements are akin to factoring agreements only insofar as community banks are akin to loan sharks; the premium charged under MCA contracts dwarfs that of traditional factors, while MCA agreements seek to impact *all* future receivables of a company in contrast to the sale of specifically-identified (and contemporaneously extant) receivables that ordinarily underly a factoring agreement.

6.     Too often, the only way for a small business to survive the repayment rigors of an MCA agreement is to enter into a new MCA agreement, just as consumers take out one payday loan to satisfy the obligations attendant to the last payday loan; increasingly, the oft-vicious cycle of MCA debt is driving small businesses to seek relief under Title 11 of the United States Code, and such is very much what happened here.

7.     Gannett Peak accordingly now brings suit against MAFL, proceeding under the very theory so boldly advertised by MAFL: the transaction in question ought not be characterized as a loan but, rather, as a sale of future receivables. If so, the transaction is a textbook fraudulent

2

conveyance, as Gannett Peak – being insolvent at all times relevant – bargained away $47,250.00 in future receivables for $33,450.00, a sum of money that does not even vaguely approximate reasonably equivalent value.

8.      To be sure, other ills are afoot *sub judice*; it seems MAFL has run roughshod over the automatic stay in a particularly egregious fashion, and there is a lien thusly in need of avoidance. But at core, this suit is brought to cast light upon the pernicious harms of the MCA industry, while affording relief for Gannett Peak – an entity that, unfortunately, appears to be just the latest victim of this deleterious fad.

### Parties

9.      Gannett Peak is a North Dakota limited liability company and a debtor-in-possession, having petitioned for relief under Section 301 of Title 11 of the United States Code on July 29, 2023.

10.      MAFL is a Delaware limited liability company that purports to have its principal place of business in the Commonwealth of Pennsylvania.

11.      MAFL is not registered to conduct business in the State of North Dakota.

### Jurisdiction and Venue

12.      This Honorable Court enjoys jurisdiction over the instant proceeding, pursuant to the allowances of Section 157(b)(2)(A, H, O) of Title 28 of the United States Code, as this case concerns the administration of the Debtor's estate, an effort to recover a fraudulent conveyance, and the adjustment of the debtor-creditor relationship.

13.      Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1334 of Title 28 of the United States Code, as this matter relates to a proceeding under Title 11 of the United States Code.

## General Allegations

14.     Gannett Peak is in the business of operating a Tex Mex-themed restaurant and bar in Grafton, North Dakota, serving members of the local community and collecting revenues through the sale of food and beverages.

15.     Needing cash to sustain its operations, Gannett Peak entered into the Agreement, with MAFL, on July 17, 2023. *See* Agreement, attached hereto as Exhibit A.

16.     Per the Agreement, MAFL is to fund $33,450.00 to Gannett Peak, *see* Agreement, Exhibit A, at p. 2, in exchange for Gannett Peak diverting $47,250.00 in future receivables to MAFL through payments of $1,312.50 per week, *id.*

17.     The Agreement was drafted by MAFL and, in addition to proclaiming the transaction to not be a loan in the manner referenced *supra*, provides, *inter alia*, "Merchant is selling a portion of a future revenue stream to MicroAdvance at a discount, not borrowing money from MicroAdvance." *Id.* at p. 2.

18.     Despite the repetitive internal denials of lending activity, the Agreement provides for a personal guaranty of payment, by Gannett Peak's principal. *Id.* at p. 12, § 13.

19.     Also in spite of the repetitive denials of lending activity, MAFL recorded a UCC-1 lien to secure its claim against Gannett Peak's various receivables.

20.     It was initially believed MAFL recorded the foregoing UCC-1 lien on or about July 20, 2023 – three days after the Agreement was executed – but, upon further review of the North Dakota UCC index, it appears MAFL may have recorded the foregoing UCC-1 lien on August 11, 2023, nearly two weeks after Gannett Peak sought bankruptcy protection.

21.     MAFL was given notice of the Debtor's bankruptcy at the time of its filing and then, subsequently, given notice of the Debtor's motion for leave to utilize cash collateral.

4

22.    On August 10, 2023, MAFL was *again* notified of the bankruptcy proceeding, when proposed counsel for Gannett Peak wrote to counsel for MAFL to request MAFL cease collection activities, and when proposed counsel for Gannett Peak then spoke – by telephone – with counsel for MAFL to relay the same request.

23.    It now appears that after (i) receiving notice of the bankruptcy of Gannett Peak; (ii) receiving a copy of Gannett Peak's motion to use cash collateral, via US Mail; (iii) receiving a copy of Gannett Peak's motion to use cash collateral, via e-mail; (iv) receiving a letter from proposed counsel for the Debtor, informing MAFL of the bankruptcy of Gannett Peak, via e-mail; and (v) having its counsel speak with proposed counsel for Gannett Peak about the pendency of the bankruptcy proceeding, the response of MAFL was to then record a UCC-1 financing statement.

### Count I – Fraudulent Conveyance (11 U.S.C. § 548)

24.    Gannett Peak repeats and realleges paragraphs 1-2 3of this Complaint, as though fully set forth herein.

25.    In paying $33,450.00 for the acquisition of $47,250.00 in future revenues of the Debtor, MAFL did not afford reasonably equivalent value to Gannett Peak.

26.    Specifically, since MAFL was not purchasing any identified receivable or collection of receivables but, rather, a portion of *all* future receivables of the Debtor, MAFL did not undertake any cognizable risk of the Debtor's customers not paying their correlative obligations.

27.    Indeed, since the Debtor is a restaurant/bar, and its "receivables" are comprised of the funding of credit card payments tendered by diners/consumers, MAFL did not undertake any

cognizable risk of the Debtor not collecting the promised sum of $1,312.50 in revenues each week for a series of approximately 36 weeks.

28.    As MAFL was aware at all times relevant, the Debtor has always collected more than $1,312.50 in revenues per week (since the incipiency of the Debtor's public-facing operations) and, as such, was virtually assured of receiving 100% of the monies pledged to MAFL.

29.    This accordingly created a paradigm where MAFL was not purchasing risk or offering a modestly-discounted purchase price for future revenues so as to account for the net present value of money; this was, rather, a situation whereby MAFL was purchasing an assured sum of $47,250.00 – payable in equal installments, over roughly 36 weeks – for just over 70 cents on the dollar.

30.    At the time of entering into this transaction, Gannett Peak (i) was unable to pay its debts as they came due (hence the need to obtain money from MAFL); and (ii) had total liabilities that exceeded its total assets, thereby rendering Gannett Peak insolvent.

31.    Even if, *arguendo*, Gannett Peak was not insolvent at the time it entered into the Agreement, Gannett Peak was rendered insolvent (or, as it is, further insolvent) by virtue of the obligation assumed in the Agreement.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) avoid the Debtor's obligations under the Agreement; (ii) avoid the UCC-1 filing of MAFL together with any other security interest, perfected or inchoate, of MAFL; and (iii) afford such other and further relief as may be just and proper.

**Count II – Uniform Voidable Transactions Act (N.D. Cent. Code § 13-02.1, *et seq.*)**

32.    Gannett Peak repeats and realleges paragraphs 1-23 of this Complaint, as though fully set forth herein.

33.    Gannett Peak was insolvent, within the definition afforded by Section 13-02.1-02 of the North Dakota Century Code, at the time Gannett Peak entered into the Agreement with MAFL.

34.    Gannett Peak repeats and realleged paragraphs 25—29 of this Complaint, as though fully set forth herein, and submits the same allege the Agreement to have not afforded reasonably equivalent value to Gannett Peak.

35.    Pursuant to Section 13-02.1-11 of the North Dakota Century Code, the claims set forth in this Count II are governed by North Dakota law, notwithstanding a Pennsylvania choice of law provision in the Agreement.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) avoid the Debtor's obligations under the Agreement, pursuant to Section 544 of Title 11 of the United States Code and Section 13-02.1-04 of the North Dakota Century Code; (ii) avoid the Debtor's obligations under the Agreement, pursuant to Section 544 of Title 11 of the United States Code and Section 13-02.1-05 of the North Dakota Century Code; (iii) avoid the UCC-1 filing of MAFL together with any other security interest, perfected or inchoate, of MAFL, pursuant to Section 544 of Title 11 of the United States Code and Section 13-01.1-07 of the North Dakota Century Code; and (iv) afford such other and further relief as may be just and proper.

**Count III – Lien Avoidance (11 U.S.C. § 544)**

36.    Gannett Peak repeats and realleges paragraphs 1-23 of this Complaint, as though fully set forth herein.

37.    At the time Gannett Peak filed a petition for bankruptcy relief, on July 29, 2023, MAFL had not recorded a lien in the North Dakota UCC register as against the assets of Gannett Peak.

7

38.     Subsequent to Gannett Peak seeking bankruptcy protection, on or about August 11, 2023, MAFL proceeded to record a UCC-1 financing statement in North Dakota (the "Recorded UCC"), purporting to create a lien against the assets of Gannett Peak.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) avoid the Recorded UCC, pursuant to Section 544 of Title 11 of the United States Code; and (ii) afford such other and further relief as may be just and proper.

### Count IV – Violation of the Automatic Stay (11 U.S.C. § 362)

39.     Gannett Peak repeats and realleges paragraphs 1-23 and 38 of this Complaint, as though fully set forth herein.

40.     By filing the Recorded UCC on August 11, 2023, MAFL undertook an "act to … exercise control over property of the estate," in contravention of Section 362 of Title 11 of the United States Code.

41.     By filing the Recorded UCC on August 11, 2023, MAFL undertook an act to "perfect" a "lien against property of the estate."

42.     By filing the Recorded UCC on August 11, 2023, MAFL undertook an act to "perfect, or enforce against property of the debtor [a] lien to the extent that such lien secures a claim that arose before the commencement of the case" at bar.

43.     MAFL was on actual notice of this bankruptcy proceeding at the time it filed the Recorded UCC, having (i) received notice via US Mail; (ii) received notice via e-mail; and (iii) having received notice, through its counsel, via telephone.

44.     The Debtor has suffered actual damages as a result of this violation of Section 362 of Title 11 of the United States Code, inasmuch as the Debtor has been forced to direct its counsel

to bring suit to avoid the Recorded UCC, and to incur the legal fees associated with that effort, as a direct and consequential effect of MAFL's actions.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) enter judgment against MAFL, and in favor of Gannett Peak, in a sum equal to the damages sustained by Gannett Peak on account of MAFL's violation of Section 362 of Title 11 of the United States Code; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 28, 2023          By:     /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        The Dakota Bankruptcy Firm
                                        1630 1st Avenue N
                                        Suite B PMB 24
                                        Fargo, North Dakota 58102-4246
                                        Phone: (701) 394-3215
                                        mac@dakotabankruptcy.com
                                        *Proposed Counsel for the Debtor*

**MicroAdvance**
Macro Results

100 South Juniper Street, Third Floor, Philadelphia, PA 19107
Phone: 888.606.2871    Fax: 267.482.2646   AGR-00899588

## MERCHANT  AGREEMENT

This Merchant Agreement ("Agreement") is made as of _7/17/2023_____ between MicroAdvance Funding, LLC ("MicroAdvance") and the Merchant(s) listed below (the "Merchant") and each Guarantor listed below (each a "Guarantor").

## MERCHANT INFORMATION

Legal Name of Merchant: GANNETT PEAK, LLC

d/b/a if applicable: La Cantina

fka/aka if applicable:

Business Address: 115 W 5th St

City: Grafton                  State: ND                      Zip: 58237

State of Inception: North Dakota          EIN/Tax # XXXXX5787

## GUARANTOR #1 INFORMATION

Name of Owner #1: Mark Petri

Date of Birth: 1972              SSN: XXX-XX-9517

Residential Address: 28 Center Ave N

City: Mayville                   State: ND                     Zip: 58257

## GUARANTOR #2 INFORMATION

Name of Owner #2:

Date of Birth:                   SSN:

Residential Address:

City:                            State:                        Zip:

## GUARANTOR #3 INFORMATION

Name of Owner #3:

Date of Birth:                   SSN:

Residential Address:

City:                            State:                        Zip:

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: X _MDP_   X _____   X _____      Guarantor: X _MDP_   X _____   X _____

1

# THIS IS NOT A LOAN

Merchant hereby sells, assigns and transfers to MicroAdvance (making MicroAdvance the absolute owner), without recourse, in consideration of the "Purchase Price" specified below, the "Specified Percentage" of the proceeds of each future sale made by Merchant (collectively "Future Receipts") until MicroAdvance has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Merchant's business. As payment for the Purchased Amount, Merchant will deliver to MicroAdvance the Purchase Price minus the Origination Fee, as set forth below. BASED UPON MERCHANT'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, MERCHANT IS CONFIDENT THAT THE PURCHASE PRICE PAID BY MICROADVANCE IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT MERCHANT'S CURRENT AND FUTURE BUSINESS OPERATIONS. MERCHANT ACKNOWLEDGES THAT THIS TRANSACTION IS IN THE ORDINARY COURSE OF ITS BUSINESS.

MicroAdvance will debit the specific Weekly Increment each week from only one depositing bank account, which account must be acceptable to and pre-approved by MicroAdvance, (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as MicroAdvance receives the full Purchased Amount. Merchant hereby irrevocably authorizes MicroAdvance to ACH Debit the specified remittances from the Merchant's bank account on a weekly basis and will provide MicroAdvance with all required access codes, and monthly bank statements. Merchant will be held responsible for any fees incurred by MicroAdvance resulting from a rejected ACH attempt or an event of default. (See Addendum attached hereto and incorporated herein) MicroAdvance is not responsible for any overdrafts or rejected transactions that may result from MicroAdvance ACH debiting the specified amounts under the terms of this Agreement. MicroAdvance will debit the specific Weekly Increment each week. Weekly debits shall be converted to daily debits, equal to one-fifth of the weekly debit, upon the receipt of a rejected ACH.

Purchase Price: $ 35000.00                    Purchased Amount: $ 47250.00

In Weekly Increments of: $ 1312.50             Purchase Percentage: % 14.25%

Origination Fee. An Origination Fee totaling $ _1550.00_____ shall be deducted from the Purchase Price prior to funding. You will receive a Net Purchase Price in the amount of $ 33450.00_____ at funding.

**MicroAdvance's Acknowledgment.** Merchant is selling a portion of a future revenue stream to MicroAdvance at a discount, not borrowing money from MicroAdvance. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by MicroAdvance. Merchant going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. MicroAdvance is entering into this Agreement knowing the risks that Merchant's business may slow down or fail, and MicroAdvance assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give MicroAdvance a reasonable and fair opportunity to receive the benefit of its bargain.

## THIS SPACE IS INTENTIONALLY LEFT BLANK

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: X  MDP    X_____  X_____        Guarantor: X  MDP    X_____  X_____

Merchant's Right to Request a Reconciliation. The Weekly Increment amount is intended to represent the Purchase Percentage of Merchant's Future Receipts. Merchant may request that MicroAdvance reconcile Merchant's actual receipts by either crediting or debiting the difference back to or from the Account so that the amount MicroAdvance debited in the most recent calendar month equaled the Purchase Percentage of Future Receipts that Merchant collected in that calendar month. Any reconciliation request must be: (1) in writing; (2) include a copy of the Merchant's financial statements for all the business -related financial accounts for the calendar month at issue; and (3) be sent to MicroAdvance at 100 South Juniper Street, Third Floor, Philadelphia, PA 19107 or emailed to resolutions@microadvance.com within 30 days after the last day of the calendar month at issue. It is solely the Merchant's responsibility to send complete financial statements. Upon receipt of the Merchant's request for reconciliation, as set forth above, MicroAdvance shall reconcile the Merchant's account. Failure to send a written reconciliation request within 30 days after the last day of the calendar month at issue forfeits that month's reconciliation.

Merchant's Right to Request a Reduction based on Loss of Revenue. In the event of a temporary decrease in revenue, Merchant may request a temporary reduction in the Weekly Increment. A reduction request must be: (1) in writing; (2) include a copy of the Merchant's financial statements for all the business-related financial accounts for the last three months and month to date statements from each business related financial account; (3) additional requested supporting documentation; and (4) be sent to MicroAdvance at 100 South Juniper Street, Third Floor, Philadelphia, PA 19107 or emailed to resolutions@microadvance.com.

Merchant's Right to Request a Reduction for affordability, not based on a Loss of Revenue. A reduction request must be: (1) in writing; (2) include a copy of the Merchant's financial statements for all the business-related financial accounts for the last three months and month to date statements from each business-related financial account; (3) additional requested supporting documentation; and (4) be sent to MicroAdvance at 100 South Juniper Street, Third Floor, Philadelphia, PA 19107 or emailed to resolutions@microadvance.com. MicroAdvance retains the discretion to determine whether or not a reduction for affordability, not based on loss of revenue is warranted. An administrative fee may apply, at the discretion of MicroAdvance. All fees applicable under this Agreement are listed in the attached Fee Addendum.

To the extent set forth herein, each of the parties whose signature appears below is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth herein. Each Merchant and Owner represents that he or she is duly authorized to sign this Agreement on behalf of the Merchant, and that the information provided herein and in all of MicroAdvance's documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and MicroAdvance and MicroAdvance shall be entitled to all remedies available under law. MicroAdvance may request monthly statements reflecting the delivery of the Purchase Percentage of Future Receipts from Merchant via a processor of Merchant's Receipts and/or Operator (a "Processor") to MicroAdvance. Merchant and each of the Guarantors authorizes MicroAdvance, its agents, assignees, and representatives and any credit reporting agency engaged by MicroAdvance, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Guarantors for the purpose of this Agreement, and (ii) obtain a consumer or business credit report at any time now or for so long as Merchant and/or Guarantors continue to have any obligation owed to MicroAdvance as a consequence of this Agreement or for MicroAdvance's ability to determine Merchant's eligibility to enter into any future agreement with MicroAdvance.

Each Guarantor further guarantees the performance obligations hereunder and agrees to pay all Indemnified Amounts (as defined in Sec 5.6 of this Agreement). By signing below Guarantors agree to this Guarantee and each representation, warranty and covenant set forth in Sections 2 and 3.1 of this Agreement, which representations, warranties and covenants shall survive the termination of this Agreement.

### TERMS & CONDITIONS OF PURCHASE AGREEMENT

### 1. STATEMENTS AND REPORTS

Section 1.1 Credit Reports. Merchant and each Guarantor authorizes MicroAdvance and its agents, assignees and representatives and any credit reporting agency employed by the MicroAdvance to investigate any references given or any other statements of data obtained from or about the Merchant, and any Guarantor or any of Merchant's other principals for the purpose of this Agreement and to order, receive and review business and consumer credit reports at any time now or in the future on the Merchant, Guarantor(s) and principals.

Section 1.2 Transactional History. Merchant authorizes all of its banks and brokers to provide MicroAdvance with Merchant's banking, Brokerage and/ or processing history to determine qualification and/or continuation in this program.

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: X ⌐DS MDP   X_____   X_____        Guarantor: X ⌐DS MDP   X_____   X_____

Section 1.3 Indemnification. Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers' directors, and shareholders, against all losses, damages, claims, liabilities, and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by MicroAdvance for monies owed to MicroAdvance from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instruction provided by MicroAdvance.

## 2. REPRESENTATIONS, WARRANTIES AND COVENANTS. Merchant hereby represents, warrant and covenant  that as of this date and during the course of this Agreement:

Section 2.1 Merchant's Conduct. Merchant shall: (i) not change the account name, password or other access information relating to accounts from which ACH or electronic check payments are to be made without giving MicroAdvance at least ten (10) business days prior written notice of such change; (ii) not voluntarily sell, dispose, convey or otherwise transfer its business or all or any substantial portion of its assets, in each case, without the express prior written consent of MicroAdvance and the purchaser or assignee's assumption of all of the Merchant' s obligations under this Agreement pursuant to the documentation reasonably satisfactory to MicroAdvance; (iii) not sell, dispose, convey or otherwise transfer any of its future accounts receivable; (iv) not voluntarily grant any security interest or lien upon its accounts receivable or other assets; (v) not incur any debt on the business without the express prior written consent of MicroAdvance; and (vi) not commit fraud.

Section 2.2 Financial Condition/Business Information. Merchant's bank and financial statements, from all accounts related to the business, copies of which have been furnished to MicroAdvance, and future statements that will be furnished hereafter at the request of MicroAdvance, fairly represent the financial condition of Merchant at such dates. MicroAdvance may request statements, including, if applicable, all information necessary to permit MicroAdvance and its agents to determine the amount to be paid to Merchant under MicroAdvance's "ACH Program" and initiate such electronic check or ACH payments, at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to MicroAdvance within five (5) days. Merchant's and Guarantor's failure to do so is a material breach of this Agreement.

Section 2.3 Reliance on Information. The Merchant acknowledges that the information, financial and other, provided by the Merchant has been relied upon by MicroAdvance in connection with its decision to purchase the Future Receipts of the Merchant.

Section 2.4 Governmental Approvals. The Merchant possesses and is in compliance with all permits, licenses, approvals, consents and other authorizations necessary to conduct its business. The Merchant is in compliance with any and all applicable federal, state and local laws and regulations. The Merchant possesses all requisite permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

Section 2.5 Authorization. The Merchant, and each Owner signing this Agreement on behalf of Merchant, have full power and authority to enter into and perform the obligations under this Agreement, all of which have been duly authorized by all necessary and proper action.

Section 2.6 Change of Name, Location, Etc. The Merchant will not conduct its businesses under any name other than as disclosed to the credit card processor accepted by MicroAdvance or change any of its places of business. In addition, Merchant will not change its legal name, entity type or state of formation, unless it has provided MicroAdvance with not less than thirty (30) days prior written notice thereof and any documents, agreements and information reasonably requested by MicroAdvance with respect thereto.

Section 2.7 Conduct of Business. Merchant shall conduct its business in good faith and will use its best efforts to maintain and grow its business, to enable MicroAdvance to obtain the Purchased Amount. As of the date hereof, Merchant has no present intention of closing its business or ceasing to operate its business, either permanently or temporarily, during the six (6) month period following the date hereof.

Section 2.8 Bankruptcy. As of the date hereof, Merchant is not contemplating any bankruptcy or insolvency benefit of creditors, and no other proceeding has been instituted by or against Merchant seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of its debts. As of the date hereof, Merchant and Owner/Guarantors each represent that it has not consulted a bankruptcy attorney or a debt consolidation company within six months prior to the date of this Agreement. As of the date hereof, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the Agreement.

Section 2.9 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of MicroAdvance.

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: **X** [MDP]  **X**_____  **X**_____    Guarantor: **X** [MDP]  **X**_____  **X**_____

4

**INITIALS** [ MDP ] Section 2.10 Business Purpose. The Merchant acknowledges that this Agreement is a commercial transaction. **Merchant affirms that the Purchase Price will be used for the benefit of the business and that the Merchant exercises actual control over the managerial decisions of the business in which the funds are to be used.**

Section 2.11 Default Under Other Contracts. Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

Section 2.12 Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from MicroAdvance, execute acknowledge and deliver to MicroAdvance and/or to any other person, firm or corporation specified by MicroAdvance, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been any modifications, that the same are in full force and effect as modified and stating the modifications) and stating the dates on which the Purchased Amount or any portion thereof has been delivered.

## 3. ADDITIONAL TERMS.

Section 3.1 Sale of Future Receipts. By this Agreement, Merchant transfers to MicroAdvance full and complete ownership of the Purchased Amount of Future Receipts and Merchant retains no legal or equitable interest therein. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to MicroAdvance a security interest in all right, title, and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. The Merchant and MicroAdvance acknowledge and agree that the Purchase Price paid by MicroAdvance in exchange for the Purchased Amount of Future Receipts is a purchase of the Purchased Amount and is not intended to be, nor shall it be construed as, a loan from MicroAdvance to the Merchant. Merchant agrees that the Purchase Price and the Purchased Amount equals the fair market value of such Receipts. MicroAdvance has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to MicroAdvance in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by MicroAdvance. Merchant knowingly and willingly waives the defense of Usury in an action or proceeding.

Section 3.2 Collection of Receipts. As provided herein, the Purchased Percentage shall be collected by MicroAdvance from electronic check or ACH payments initiated by MicroAdvance or its agents. In the event that Merchant changes or permits the change of its bank or similar accounts from which MicroAdvance is permitted to debit the Purchased Percentage, MicroAdvance shall have the right, without waiving any of its rights and remedies and without notice to Merchant or any Guarantor, to initiate debits, electronic checks or other payment mechanisms against any accounts owned by or maintained for the benefit of the Merchant. Merchant hereby grants to MicroAdvance an irrevocable power of attorney, which power of attorney shall be coupled with an interest, and hereby appoints MicroAdvance or any of MicroAdvance's representatives as Merchant's attorney in fact, to take any and all action necessary to recover payment to MicroAdvance as contemplated by this Section 3.2.

Section 3.3 Chargebacks. In the event any Future Sale proceeds becomes the subject of a charge back, returned check, or other negation of the future sale prior to MicroAdvance receiving value for the Future Sale Proceeds in the form of a cash transfer from the Bank Account to MicroAdvance, then the Purchased amount will be increased by the amount so charged back, returned or negated and shall be paid to MicroAdvance from subsequent credit card receivables and/ or ACH debits.

Section 3.4 No Right to Repurchase. The Merchant acknowledges that it has no right to repurchase the Purchased Amount of Future Receipts from MicroAdvance.

Section 3.5 Liability. In no event will MicroAdvance be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential I damages, each of which is waived by Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of MicroAdvance's legal fees and expenses resulting therefrom.

Section 3.6 Accounting, Records, Place of Business. MicroAdvance or its designated representatives and agents shall have the right during Merchant's normal business hours and at any other reasonable time to examine the interior and exterior of any of Merchant's place of business. MicroAdvance may examine, among other things, whether Merchant (a) has a place of business that is separate from any personal residence; (b) is open for business and (c) has sufficient inventory to conduct Merchant's business. When performing an examination, MicroAdvance may photograph the interior and exterior Merchant's place of

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: X [ MDP ]    X_____    X_____        Guarantor: X [ MDP ]    X_____    X_____

DocuSign Envelope ID: BFA5A4BE-9788-41C4-83A5-E45293BDFEAB

business, including any signage, and may photograph the Owner. MicroAdvance or any of its agents shall have the right to inspect, audit, check and make extracts from any copies of the books, records, journals, orders, receipts, correspondence, that relate to Merchant's accounts or other transaction between the parties there to and the general financial condition of Merchant and MicroAdvance may remove any of such records temporarily for the purpose of having copies made thereof. MicroAdvance shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Purchase Percentage of receipts has been made available for remittance to MicroAdvance. Merchant hereby agrees to fully cooperate with such analysis upon the request of MicroAdvance.

Section 3.7 Weekly Remittance. Merchant will batch out receipts with Processor and/or authorize ACH debits on a weekly basis.

Section 3.8 Protection of Information. Merchant and each person signing this Agreement on behalf of Merchant and/or Owner/Guarantor, in respect of himself or herself personally authorizes MicroAdvance to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit reports that MicroAdvance obtains) and business conduct to agents, ISOs/Brokers, affiliates, subsidiaries and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby waive to the maximum extent permitted by law any claim for damages against MicroAdvance or any of its affiliates relating to any (i) investigation undertaken by or on behalf of MicroAdvance as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

Section 3.9 Confidentiality. Merchant and Guarantor understand and agree that the terms and conditions of the products and services offered by MicroAdvance, including this Agreement and any other MicroAdvance documentations (collectively "Confidential Information") are proprietary and confidential information of MicroAdvance. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of MicroAdvance to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses Confidential Information solely for the purpose of advising Merchant and agrees in writing to be bound by the terms of this section. A breach hereof entitles MicroAdvance to not only damages and legal fees but also to both a temporary restraining order and a preliminary injunction without bond or security.

Section 3.10 Publicity. Merchant and each of Merchant's Owners and all Guarantors hereby authorize MicroAdvance to use its, his/her name in listings of clients and in advertising and marketing materials.

Section 3.11 Terms of Agreement. This Agreement shall be in full force and effect until the Purchased Amount of Future Receipts has been received by MicroAdvance from the Merchant.

Section 3.12 Events of Default. The occurrence of any of the following events shall constitute an "Event of Default": (a) Merchant violates any term or covenant in this Agreement; (b) Merchant intentionally interferes with MicroAdvance's right to collect the Weekly Increment; (c) Any representation or warranty by Merchant in this Agreement proves to be incorrect, false or misleading in any material respect when made; ( d) the sending of notice of termination by Guarantor; (e) Merchant intentionally and not in the ordinary course transports, moves, interrupts, suspends, dissolves or terminates its business; (f) Merchant voluntarily transfers or sells all or substantially all of its assets; (g) Merchant uses multiple depository accounts not disclosed to MicroAdvance and without the prior written consent of MicroAdvance; (h) Merchant changes its depositing account or Credit Card Processor without the written consent of MicroAdvance; (i) Merchant defaults under any of the terms, covenants and conditions of any other agreement with MicroAdvance; (j) Merchant fails to provide financial information to MicroAdvance within five (5) days as set forth in Section 2.2 above; or (k) Merchant takes any action to discourage the use of electronic check processing that is settled through Processor or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payment or deposits for the purchase of Merchant's services and/or products including but not limited to direct deposit of any checks into a bank account without scanning into MicroAdvance's electronic check processor.

Section 3.13 Power of Attorney. Merchant irrevocably appoints MicroAdvance as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to MicroAdvance from Merchant, or in the case of a violation by Merchant of this Agreement or the occurrence of an Event of Default under Section 3.12 hereof, to MicroAdvance under this Agreement. MicroAdvance shall have the right, without waiving any of its rights and remedies and without notice to Merchant or any Owner/Guarantor, to contact any Processor and /or Accounts Receivable (AR) of Merchant and to direct such Processor(s)/AR(s)to make payment directly to MicroAdvance of all or any portion of the amounts received by such Processor(s)/AR(s) and to provide any information regarding Merchant requested by MicroAdvance. Each Processor/AR may rely on the previous sentence as written authorization of Merchant to provide any information requested by MicroAdvance and to make payments to MicroAdvance. Each Processor/AR is hereby irrevocably authorized and directed by Merchant to follow any instruction of MicroAdvance regarding payment or transfer of funds as instructed by MicroAdvance, without inquiry as

**I acknowledge and agree to the terms and conditions herein:**



Merchant Initials: **X** ___MDP___   **X**_____   **X**_____        Guarantor: **X** ___MDP___   **X**_____   **X**_____

6

to MicroAdvance's right or authority to give such instructions. Merchant acknowledges the terms of the preceding sentence and agrees not to (1) interfere with MicroAdvance's instructions or a Processor's/AR's compliance with this Agreement or (2) request any modification thereto without MicroAdvance's prior written consent.

Section 3.14 Remedies. In the event of (a) any Event of Default; (b) any breach or inaccuracy of any representation or warranty made by Merchant in this Agreement or in any certificate or other document delivered by or on behalf of Merchant pursuant hereto, or (c) any breach or default in the performance by Merchant of any covenant or agreement contained in this Agreement or in any certificate or other document delivered by or on behalf of Merchant pursuant hereto (any of the foregoing, a "Breach"), MicroAdvance shall be entitled to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's or Guarantor's obligations hereunder (including the Performance Guaranty in Section 13 of this Agreement) or any other legal or equitable right or remedy under Article 9 of the Uniform Commercial Code or other applicable law. In the event that the Merchant Breaches the covenants in this Agreement, the Merchant agrees that MicroAdvance shall be entitled to, among other things, damages equal to the amount by which the cash attributable to the Purchased Amount exceeds the amount of cash received from the Future Receipts that have previously been delivered by the Merchant to MicroAdvance under this Agreement. The Merchant hereby agrees that MicroAdvance may automatically debit such damages from the Merchant's bank account via ACH, electronic check or wire transfer, and/or may notify the credit card processor to remit to MicroAdvance any and all amounts received by the processor to satisfy the full amount of the then outstanding balance of the Purchased Amount. In addition, an d to the extent not prohibited by applicable law and any agreements between the Merchant's credit card processor and the applicable credit card association, MicroAdvance and Merchant's credit card processor shall be authorized to place Merchant on any "terminated merchant" file list with any applicable credit card association in the event of a Breach by Merchant of this Agreement. Further, MicroAdvance shall be entitled to collect all Indemnified Amounts from Merchant and/or Guarantors in accordance with this Agreement. Subject to Arbitration as set forth in Section 8 all rights, powers and remedies of MicroAdvance in connection with this Agreement may be exercised at any time by MicroAdvance after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

Section 3.15 D/B/A's. Merchant hereby acknowledges and agrees that MicroAdvance may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between MicroAdvance and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

Section 3.16 Adjustments to the Specific Amount. The Weekly Increments are intended to represent the Purchase Percentage of Merchant's Receipts each calendar month. At any time, MicroAdvance may adjust the Increment so that the amount received by MicroAdvance in the future more closely represents the Purchase Percentage.

Section 3.17 Future Purchases. MicroAdvance reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

## 4. AUTOMATED CLEARING HOUSE (ACH) AUTHORIZATION

This ACH Authorization is a part of and relates to this Agreement. Merchant hereby voluntarily authorizes MicroAdvance, and its successors, affiliates, agents, representatives, employees and assigns, to initiate automatic credit and debit entries to Merchant's Bank Account s in accordance with this Agreement. Merchant agrees that MicroAdvance may initiate a credit entry to Merchant's Bank Account for the Purchased Price on or about the date on which MicroAdvance accepts this Agreement unless some other method of delivering Merchant's cash advance is agreed upon. Merchant agrees that MicroAdvance will initiate a debit entry to Merchant's Bank Account on each business day in Weekly Increment amount set forth in the Agreement. For each scheduled payment, whenever a debit entry to Merchant's Bank Account is returned to MicroAdvance for any reason, MicroAdvance may initiate a debit entry to Merchant's Bank Account up to two additional times after MicroAdvance's first presentation for each scheduled payment amount. Merchant also agrees that MicroAdvance will initiate a debit entry for any accrued returned payment fees and any interest that accrues on overdue amounts. If Merchant's payment is due on a non -business day, it will be processed on the next business day, in addition to that day's payment and fee, if any. MicroAdvance may, at its discretion, add returned payments and fees to the end of the term.

This ACH Authorization is to remain in full force and effect for this transaction until Merchant's obligation to deliver Future Receipts to MicroAdvance is fully satisfied. Merchant may only revoke this ACH Authorization by contacting MicroAdvance directly. If Merchant revokes its ACH Authorization, Merchant agrees to remit payments to MicroAdvance by certified check or money order. In no event shall any revocation of this ACH Authorization be effective with respect to entries processed by us prior to our receipt of a notice to withdraw such ACH Authorization. Merchant's bank may charge a fee in connection with MicroAdvance's credit and/or debit entries. Contact Merchant's financial institution for more information specific to Merchant's Bank Account. Merchant authorizes MicroAdvance to verify all of the information that Merchant has provided, including past and/or current information. Merchant agrees that this ACH Authorization is for delivery of the Purchased Amount of Future Receipts and that these entries shall recur at substantially regular intervals as set forth in this

**I acknowledge and agree to the terms and conditions herein:**



Merchant Initials: X _____  X_____  X_____        Guarantor: X _____  X_____  X_____

7

DocuSign Envelope ID: BFA5A4BF-9788-41C4-83A5-E45293BDFEAB

Agreement. If there is any missing or erroneous information in or with Merchant's application regarding Merchant's bank, bank routing and transit number, or account number, then Merchant authorizes MicroAdvance to verify and correct such information. If Merchant's payment is returned to MicroAdvance by Merchant's financial institution due to a closed account, Merchant agrees that MicroAdvance may recover court costs and reasonable attorney's fees incurred by MicroAdvance as permitted by the laws of the Commonwealth of Pennsylvania.

This ACH Authorization is subject to the following provisions:

    (a)  Right to stop payment and procedure for doing so. If Merchant has informed MicroAdvance in advance to make regular payments out of Merchant's Bank Account, Merchant can stop any of these payments. Procedure: Call MicroAdvance at 888.606.2871 three (3) or more business days before the payment is scheduled to be debited. If Merchant calls, MicroAdvance may also require Merchant to put Merchant's request in writing within fourteen (14) days of Merchant's verbal request.

    (b)  Liability for failure to stop payment of preauthorized transfer. If Merchant requests, in writing, that MicroAdvance stop one of these payments three (3) or more business before the transfer is scheduled, and MicroAdvance does not do so, MicroAdvance will be liable for Merchant's reasonable direct losses or damages.

## 5. MISCELLANEOUS

Section 5.1 Modifications; Amendments. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

Section 5.2 Required Notifications. Merchant is required to give MicroAdvance written notice within twenty-four (24) hours of any filing under Title 11 of the United States Code. Merchant is required to give MicroAdvance seven days written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

Section 5.3 Notices. Unless expressly stated otherwise in this Agreement, all notices, requests, demands and other communications hereunder shall be in writing and shall be delivered by email, mail, overnight delivery or hand delivery to the respective parties to this Agreement. Notices shall be sent to the addresses set forth on the face of the Agreement.

Section 5.4 Waiver; Remedies. No failure on the part of MicroAdvance to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise of any other right. Subject to Arbitration in Section 8 of this Agreement, the remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity. Merchant consents to the waiver of notice prior to MicroAdvance exercising any and all rights provided for in this Agreement.

Section 5.5 Acknowledgment of Security Interest and Security Agreement. The Future Receipts sold by Merchant to MicroAdvance pursuant to this Agreement shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Merchant to MicroAdvance. To the extent the Future Receipts are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Merchant is located ("UCC") then: (i) the sale of the Future Receipts creates a security interest as defined in the UCC; (ii) this Agreement constitutes a "security agreement" under the UCC; and (iii) MicroAdvance has all the rights of a secured party under the UCC with respect to such Future Receipts. Merchant further agrees that, with or without an Event of Default, MicroAdvance may contact Credit Card Processors and holder of Accounts Receivable and may instruct them to make payment or otherwise render performance to or for the benefit of MicroAdvance.

Section 5.6 Financing Statements. Merchant authorizes MicroAdvance to file one or more UCC-1 forms consistent with the UCC to give notice that the Purchased Amount of Future Receipts is the sole property of MicroAdvance. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Merchant is prohibited from obtaining any financing that impairs the value of the Future Receipts or 'MicroAdvance's right to collect same. Merchant authorizes MicroAdvance to debit the Account for all costs incurred by MicroAdvance associated with the filing, amendment or termination of any and all UCC filings.

Section 5.7 Indemnified Amounts. In the event of a Breach, Merchant and Guarantor shall assume liability for and do hereby agree to indemnify, protect, save and keep harmless MicroAdvance and its agents and servants, from and against any and all liabilities, claims, losses, obligations, damages, penalties, actions, and suits of whatsoever kind and nature imposed on, incurred by or asserted against MicroAdvance or its agents and servants, in any way relating to or growing out of such Breach (collectively, "Indemnified Amounts"), including, without limitation, the payment of all costs and expenses of every kind for the enforcement of

**I acknowledge and agree to the terms and conditions herein:**



Merchant Initials: X ⎣MDP⎦    X_____    X_____        Guarantor: X ⎣MDP⎦    X_____    X_____        8

MicroAdvance's rights and remedies hereunder, including attorneys' fees and costs, incurred by us as permitted by the laws of the Commonwealth of Pennsylvania, in any court proceeding, any administrative proceeding, any arbitration or mediation, or any negotiations or consultations in connection with any Breach.

Section 5.8 Assignment. Merchant is prohibited from transferring or assigning this Agreement, or any of its rights or obligations hereunder, without MicroAdvance's prior written consent, which may be withheld in its sole discretion. The rights and obligations of MicroAdvance under this Agreement may be transferred or assigned either in whole or in part at any time by MicroAdvance without the consent of Merchant, provided that such transferee or assignee takes such transfer or assignment subject to the terms and conditions of this Agreement.

Section 5.9 Interpretation. All Parties hereto have read this Agreement with an attorney of their own choosing or have had the opportunity to do so and have relied only on their own attorney's guidance and advice before executing this Agreement. No construction determination shall be made against either party hereto as Drafter.

Section 5.10 Severability. In the event any provision in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

Section 5.11 Survival of Representations, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force and effect until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

Section 5.12 Entire Agreement. This Agreement, together with any addenda or riders hereto or to any credit card processing agreement, contains the entire agreement and understanding between Merchant and MicroAdvance and supersedes all prior agreements and understandings relating to the subject matter hereof unless otherwise specifically reaffirmed or restated herein.

Section 5.13 Electronic Signatures. If any transaction document is signed electronically the Parties agree that such document shall be considered the original executed of such document and shall be binding and enforceable as to both parties in accordance with the Provisions of the Electronic Signatures in Global and National Commerce Act.

Section 5.14 Facsimile Acceptance. Facsimile signatures shall be deemed acceptable for all purposes.

## 6. COSTS/FEES
**Section 6.1 Costs, Arbitration Fees & Attorney Fees. If Arbitration is commenced to enforce or interpret any of the provisions of the Agreement the prevailing party shall be entitled to recover from the non -prevailing party its attorney fees, arbitration fees, expert witness fees, costs and expenses of Arbitration, in addition to any other relief to which such prevailing party may be entitled. As used herein, "prevailing party" includes without limitation, a party who dismisses an action for recovery hereunder in exchange for payment for the sums allegedly due, performance of covenants allegedly breached, or consideration substantially equal to the relief sought in the action.**

Section 6.2 Default Fee. Upon the occurrence of any Event of Default, and written notice to Merchant thereof, Merchant shall pay to MicroAdvance a default fee in an amount equal to **Twenty (20%) Percent** of the outstanding undelivered Purchased Amount or $2,000.00, whichever is greater. The Default Fee shall be payable on demand and stand in addition to any other fees or penalties outlined within this Agreement and all related documents.

## 7. MONITORING, RECORDING, SOLICITATION
Section 7.1 Authorization to Contact by Telephone. Merchant and each Owner/Guarantor hereby authorize MicroAdvance, its affiliates, ISOs/Brokers, agents, representatives and independent contractors to contact Merchant and each Owner/Guarantor at any telephone number Merchant or any Owner/Guarantor provides to MicroAdvance or from which Merchant or any Owner/Guarantor places a call to MicroAdvance, or any telephone number where MicroAdvance believes it may reach Merchant or any Owner/Guarantor, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voice or prerecorded messages, even if Merchant and/or Owner/Guarantor incurs charges for receiving such communication.

**I acknowledge and agree to the terms and conditions herein:**



Merchant Initials: **X** ⌐DS⌐ M.D.P **X**_____ **X**_____    Guarantor: **X** ⌐DS⌐ M.D.P **X**_____ **X**_____    9

Section 7.2 Authorization to Contact by Other Means. Merchant and each Owner/Guarantor also agrees that MicroAdvance, its affiliates, agents, representatives and independent contractors, may use any other medium not prohibited by law, included but not limited to, mail, e-mail, and facsimile, to contact Merchant and each Owner/Guarantor expressly to conduct business by electronic means.

Section 7.3 Right to Opt-Out or Make Changes. Merchant and each Owner/Guarantor are not required to agree to the receipt of text messages and/or emails in order to enter into this Agreement. If Merchant or any Owner/Guarantor wishes to opt -out of receipt of text messages and/or emails or if Merchant or any Owner/Guarantor wants to change how MicroAdvance contacts them, including with respect to any telephone number that MicroAdvance might use please call MicroAdvance at 888.606.2871 and select Customer Service from the menu prompt; reply STOP as instructed in the text message; or e-mail at optout@microadvance.com with "opt out" in the subject line.

Section 7.4 Authorization to Record Calls. Merchant and each Owner/Guarantor agree that MicroAdvance, its affiliates, ISOs, Brokers, agents, representatives and independent contractors may listen to or record telephone calls between Merchant or any Owner and MicroAdvance's affiliates, agents, representatives and independent contractors without additional notice to Merchant, Owner, or Guarantor.

**8. Arbitration Provision**.
This Arbitration Provision shall apply to this Agreement and all other Agreements between MicroAdvance and the Merchant and/or Guarantor. MicroAdvance and the Merchant and/or Guarantor herby agree to resolve any Dispute(s) through Private Arbitration. Merchant/Guarantor may have retained third-party agents to assist Merchant in obtaining funds from MicroAdvance. Merchant/Guarantor agree that any such agents are third party beneficiaries of this Arbitration Provision and are entitled to request arbitration to the same extent as if they were signatories to the Agreement. By agreeing to this Arbitration Provision, the Parties are waiving their rights to (1) have juries resolve Disputes, (2) have courts resolve Disputes, and (3) participate in a class action lawsuit.

Section 8.1 FACTS ABOUT ARBITRATION. ARBITRATION IS A PROCESS UNDER WHICH A PERSON WITH A DISPUTE: (A) WAIVES THEIR RIGHTS TO FILE A LAWSUIT AND HAVE A JURY DECIDE THAT DISPUTE; AND (B) AGREES INSTEAD TO SUBMIT SUCH DISPUTE TO A NEUTRAL THIRD PERSON (AN "ARBITRATOR") FOR FINAL AND BINDING RESOLUTION. EACH PARTY TO ARBITRATION HAS AN OPPORTUNITY TO SUBMIT INFORMATION SUPPORTING THEIR CLAIMS AND DEFENSES TO THE ARBITRATOR. SUCH PRE-ARBITRATION DISCOVERY IS MORE LIMITED THAN WHAT APPLIES IN A COURT TRIAL, AND THE ARBITRATION ITSELF IS PRIVATE AND LESS FORMAL THAN A COURT TRIAL. MERCHANT/GUARANTOR AND MICROADVANCE HEREBY AGREE THAT ANY ARBITRATION ARISING UNDER THIS PROVISION SHALL BE SUBJECT TO EXPEDITED ARBITRATION PROCEDURES, WHEN AVAILABLE. THE APPLICATION OF EXPEDITED ARBITRATION PROCEDURES SHOULD RESULT IN A FASTER FINAL DECISION. IN ORDER TO FACILITATE SUCH PROMPTNESS, THE SCOPE AND DURATION OF PRE-ARBITRATION DISCOVERY AND THE TIME ALLOWED FOR RESPONDING TO INFORMATION REQUESTS WILL BE MORE LIMITED THAN WHAT WOULD APPLY IN A NON-EXPEDITED ARBITRATION. AT THE CONCLUSION OF THE ARBITRATION, THE ARBITRATOR WILL ISSUE A FINAL AND BINDING DECISION THAT CAN BE ENFORCED IN THE SAME MANNER, AND TO THE SAME EXTENT, AS A COURT JUDGMENT AND IS UNLIKELY TO BE OVERTURNED OR REJECTED BY ANY COURT. IN ACKNOWLEDGEMENT AND FURTHERANCE OF THE FOREGOING, MERCHANT/GUARANTOR AND MICROADVANCE HEREBY AGREE AS FOLLOWS:

Section 8.2 Opt-Out. Rejection of Arbitration. Merchant and Guarantor may reject this Arbitration Provision by sending a notice ("Rejection Notice"), which MicroAdvance must receive-no later than ten (10) days after the date Merchant signs this Agreement.  Any Rejection Notice must be signed by both Merchant and Guarantor-and must include the Merchant's and Guarantor's name, address, telephone number, and the effective date of the Agreement. The foregoing is the only means by-which Merchant and Guarantor may reject this Arbitration Provision. If Merchant and Guarantor reject this Arbitration Provision, then any lawsuit relating to or arising out of the Agreement must be brought in the Commonwealth of Pennsylvania, County of Philadelphia.

Section 8.3 Notice. Where to Send Notice to Reject Arbitration. Merchant and Guarantor must mail the Rejection Notice or deliver it by courier service (such as Federal Express) to: MicroAdvance Funding, LLC, 100 South Juniper Street, Third Floor, Philadelphia, PA 19107 Attn: General Counsel.

Section 8.4 Definitions. The following definitions apply to this arbitration provision: "Administrator" means the Arbitrators listed below. "Dispute" and "Disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the  signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Agreement, including this Arbitration Provision, and/or any past agreement or agreements between Merchant/Guarantor and MicroAdvance; (c) all counterclaims, crossclaims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by MicroAdvance against Merchant/Guarantor including its employees, agents, directors,

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: X  X_____ X_____    Guarantor: X _____ X_____ X_____

10

officers, shareholders, governors, managers, members, or affiliated entities (hereinafter collectively referred to as Merchant's/Guarantor's "related third-parties") including claims for money damages and/or equitable or private injunctive relief; (g) all claims asserted by Merchant/Guarantor against MicroAdvance, including its employees, agents, directors, officers, shareholders, governors, managers, members, or affiliated entities (hereinafter collectively referred to as MicroAdvance's "related third parties") including claims for money damages and/or equitable or private injunctive relief; (h) all claims asserted on Merchant's/Guarantor's behalf by another person; and/or (i) all claims asserted by Merchant/Guarantor as a representative and/or member of a class of persons, and/or in any other representative capacity seeking monetary relief on behalf of persons other than or in addition to Merchant/Guarantor against MicroAdvance and/or its related third parties (hereinafter referred to as "Representative Claims".

Section 8.5 Starting the Arbitration. Any party to a Dispute, including related third parties, may send the other party written notice by certified mail, return receipt requested, of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed.

Section 8.6 Selection of Arbitrator. The Parties agree to use one of the following Arbitrators: Dispute Resolution Institute, 2 Logan Square, Suite 660, Philadelphia PA 19103, 800.656.1237; ADR Options Inc., 1800 John F Kennedy Blvd, Suite 1110, Philadelphia, PA 19103, 215.564.1775; Michael Mednick, Esq., Mednick Mezyk & Kredo PC, 101 Greenwood Avenue, Suite 203, Jenkintown, PA 19046, 215.545.1870. Merchant and Guarantor are encouraged to contact the Arbitrators listed above with any questions it may have about arbitration. The Party filing the Notice of Arbitration shall choose one of the Arbitrators listed above.

Section 8.7 Notwithstanding the foregoing, the parties agree that the arbitration shall be in English. The arbitrator shall be one of the arbitrators listed in Section 8.6. The party receiving notice of arbitration will respond in writing by certified mail, return receipt requested, within twenty (20) days. If Merchant/Guarantor demands arbitration, Merchant/Guarantor must inform MicroAdvance, in its notice of arbitration, the name of the Administrator selected. If a third party related to Merchant/Guarantor demands arbitration, Merchant/Guarantor must notify MicroAdvance within twenty (20) days in writing by certified mail, return receipt requested, the name of the Administrator selected. If Merchant/Guarantor fail to notify MicroAdvance as provided in this paragraph, MicroAdvance shall be entitled to select one or the other Administrator.

Section 8.8 What Rules Apply. The Parties acknowledge that this Agreement evidences a transaction involving interstate commerce. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), and applicable statutes of limitation and shall honor claims of privilege recognized at law. The parties to the Dispute will be governed by the rules and procedures of the Administrator to the extent those rules and procedures: (i) do not contradict the express terms of this Arbitration Provision, including the limitations on the arbitrator in this Arbitration Provision; and (ii) apply the applicable Administrator's Expedited Arbitration Procedures. Merchant may obtain a copy of the applicable rules and procedures by contacting the appropriate Administrator.

Section 8.9 The Decision of the Arbitrator. At the request of either party, the arbitrator shall provide a written explanation Arbitrator's decision and/or award. The arbitrator will apply the applicable substantive law relating to the Dispute and award any remedies available as if the Dispute was heard by a court. The arbitrator's award may be filed with any court having jurisdiction.

Section 8.10 Location of Arbitration. The arbitration hearing will be held at a location chosen by the selected Arbitrator or via Zoom or telephone.

Section 8.11 Payment of Arbitration Fees. Regardless of which party initiates the arbitration, all Arbitration Fees shall be equally divided between Merchant/Guarantor and MicroAdvance and paid for in equal measure. "Arbitration Fees" shall include the filing, administrative, hearing and arbitrator's fees (collectively the "Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees subject to reimbursement pursuant to Section 6.1.

Section 8.12 Appeal of Decision. The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA.

Section 8.13 Survival. This Arbitration Provision shall survive termination of the Agreement, including termination resulting from Merchant's/Guarantor's delivery in full of the Purchased Amount.

**9. Waiver of Jury Trial and Participation in Class Action.**
Section 9.1 Merchant and Guarantor(s) acknowledge and agree that by entering into this Arbitration Provision: (a) **MERCHANT AND GUARANTOR WAIVE THEIR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST MICROADVANCE OR RELATED THIRD PARTIES; (b) MERCHANT AND GUARANTOR WAIVE THEIR RIGHT TO HAVE A COURT OTHER THAN A SMALL CLAIMS TRIBUNAL RESOLVE ANY DISPUTE ALLEGED AGAINST MICROADVANCE**

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: **X**  **X**_____ **X**_____    Guarantor: **X** MDP **X**_____ **X**_____

**OR RELATED THIRD PARTIES; and (**c**) MERCHANT AND GUARANTOR WAIVE THEIR RIGHT TO SERVE AS A REPRESENTATIVE, OR IN ANY ANOTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST MICROADVANCE AND/OR ITS RELATED THIRD PARTIES.**

Section 9.2 No Class Actions. All disputes including any Representative Claims against MicroAdvance and/or related third parties shall be resolved by binding arbitration only. Disputes shall be resolved on an individual basis. **THEREFORE, THE ARBITRATOR SHALL NOT HAVE THE POWER TO CONDUCT CLASS ARBITRATION OR TO CONSOLIDATE CLAIMS OF MULTIPLE PARTIES; THAT IS, THE ARBITRATOR SHALL NOT ALLOW MERCHANT/GUARANTOR OR ANY INDIVIDUAL ACTING ON THEIR BEHALF OR THEIR INTERESTS TO SERVE AS A REPRESENTATIVE, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

**10. BINDING EFFECT; GOVERNING LAW, VENUE AND JURISDICTION.** THIS AGREEMENT SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF MICROADVANCE, THE MERCHANT/GUARANTOR AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, EXCEPT THAT MERCHANT/GUARANTOR SHALL NOT HAVE THE RIGHT TO ASSIGN THEIR RIGHTS HEREUNDER OR ANY INTEREST HEREIN WITHOUT THE PRIOR WRITTEN CONSENT OF MICROADVANCE WHICH CONSENT MAY BE WITHHELD IN MICROADVANCE'S SOLE DISCRETION. EXCEPT AS SET FORTH IN THE ARBITRATION SECTION, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO ANY APPLICABLE PRINCIPLES OF CONFLICTS OF LAW. MERCHANT AND GUARANTOR UNDERSTAND AND AGREE THAT (I) MICROADVANCE IS LOCATED IN PENNSYLVANIA; (II) MICROADVANCE MAKES ALL DECISIONS FROM MICROADVANCE'S OFFICE IN PENNSYLVANIA; (III) THE AGREEMENT IS MADE IN PENNSYLVANIA; THAT IS, NO BINDING CONTRACT WILL BE FORMED UNTIL MICROADVANCE RECEIVES AND ACCEPTS MERCHANT'S/GUARANTOR'S SIGNED AGREEMENT IN PENNSYLVANIA; AND (IV) MERCHANT'S PAYMENTS ARE NOT ACCEPTED UNTIL RECEIVED BY MICROADVANCE IN PENNSYLVANIA. ANY SUIT, ACTION OR PROCEEDING ARISING HEREUNDER, OR THE INTERPRETATION, PERFORMANCE OR BREACH OF THIS AGREEMENT, SHALL, IF MICROADVANCE SO ELECTS, BE INSTITUTED IN ANY COURT SITTING IN PHILADELPHIA COUNTY (THE "ACCEPTABLE FORUMS"). MERCHANT AND GUARANTOR AGREE THAT THE ACCEPTABLE FORUMS ARE CONVENIENT TO IT AND SUBMIT TO THE JURISDICTION OF THE ACCEPTABLE FORUMS AND WAIVE ANY AND ALL OBJECTIONS TO JURISDICTION OR VENUE. SHOULD SUCH PROCEEDING BE INITIATED IN ANY OTHER FORUM, MERCHANT AND GUARANTOR WAIVE ANY RIGHT TO OPPOSE ANY MOTION OR APPLICATION MADE BY MICROADVANCE TRANSFER SUCH PROCEEDING TO AN ACCEPTABLE FORUM. MICROADVANCE, MERCHANT AND GUARANTOR FURTHER AGREE THAT THE MAILING BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, OF ANY PROCESS REQUIRED BY ANY SUCH COURT WILL CONSTITUTE VALID AND LAWFUL SERVICE OF PROCESS AGAINST THEM, WITHOUT THE NECESSITY FOR SERVICE BY ANY OTHER MEANS PROVIDED BY STATUTE OR RULE OF COURT, BUT WITHOUT INVALIDATING SERVICE PERFORMED IN ACCORDANCE WITH SUCH OTHER PROVISIONS.

**11. Small Claims Tribunal**. Notwithstanding any other provision of this Agreement, Merchant/Guarantor or MicroAdvance, including their applicable related third parties, shall have the right to go to a small claims court for Disputes within the scope of such court's jurisdiction. Any Dispute that cannot be brought in a small claims court shall be resolved by binding arbitration. Any appeal of a judgment from a small claims court shall be resolved by binding arbitration.

**12. Claims of Less Than $50,000 Subject to Mandatory Arbitration in Pennsylvania Courts**. Merchant or MicroAdvance, including their applicable related third parties, shall have the right to go to Pennsylvania Court of Common Pleas if the claim asserted is: (a) less than $50,000; and (b) subject to mandatory arbitration under applicable court rules. Any Dispute that does not meet these conditions shall be resolved by binding arbitration. Any appeal of an award from the state court arbitrator shall be resolved by binding arbitration.

**13. Personal Guaranty of Performance.** Guarantor agrees to guarantee to MicroAdvance prompt irrevocably, absolutely and unconditionally and complete performance of the following obligations of Merchant (the "Guaranteed Obligations"): (a) Merchant's obligation to provide bank statements and other financial information within five days after request from MicroAdvance; (b) Merchant's 's obligation to not change its payment card processor, change its bank account, or add bank accounts; (c) Merchant's obligation to not conduct Merchant's businesses under any name other than as disclosed to MicroAdvance; (d) Merchant's obligation to not change any of its places of business without prior written consent by MicroAdvance; (e) Merchant's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of MicroAdvance, and (ii) the written agreement of any purchaser or transferee assuming all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to MicroAdvance; (f) Merchant's obligation to not enter into any merchant cash advance or any loan agreement that relates to or encumbers its Future Receipts with any party other than MicroAdvance for the duration of this Agreement without MicroAdvance's prior written consent; and (g) Merchant's obligation to provide truthful, accurate, and complete information as required by this Agreement.

**14. Guarantor Waivers.** MicroAdvance does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Personal Guaranty of Performance if it is not notified of: (i) Merchant's failure to timely perform any obligation under the

**I acknowledge and agree to the terms and conditions herein:**

Merchant Initials: **X** _MDP_  **X**_____  **X**_____          Guarantor: **X** _MDP_  **X**_____  **X**_____

12

DocuSign Envelope ID: BFA5A4BF-8788-41C4-83A5-F45293BDFEAB

Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) MicroAdvance's acceptance of the Agreement; and (iv) any renewal, extension or other modification of the Agreement or Merchant's other obligations to MicroAdvance. In addition, MicroAdvance may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement and this Performance Guaranty: (i) renew, extend or otherwise modify the Agreement or Merchant's other obligations to MicroAdvance and (ii) release Merchant from its obligations to MicroAdvance.  Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under the Agreement or this Performance Guaranty.  Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, or any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Performance Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that MicroAdvance must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under the Agreement and this Performance Guaranty shall include that amount.

**15. Guarantor Acknowledgement**. Guarantor acknowledges that Guarantor understands the seriousness of the provisions of the Agreement, including the Jury Waiver, Class Action Waiver and Arbitration sections, and has had a full opportunity to consult with counsel their choice; and has consulted with counsel or have decided not to avail himself / herself / themselves of that opportunity.

**ACCEPTANCE:** Upon execution hereof, each Merchant and each Guarantor shall be obligated hereunder and shall be subject to all of the terms and conditions stated in this Agreement, including any Addenda or Riders, if any, hereto listed above (collectively, this "Agreement"). The person executing this Agreement on behalf of the Merchant warrants and represents that he/she is authorized to bind the Merchant to all of the terms and conditions set forth in this Agreement and that all of the information provided herein is true and accurate in all respects. MicroAdvance's payment of the Purchase Price shall be deemed MicroAdvance's acceptance of this Agreement.

| MERCHANTS: | GUARANTORS: |
|---|---|
| Signature: *Mark Petri* | Signature: *Mark Petri* |
| Printed Name: Mark Petri | Printed Name: Mark Petri |
| Title: Owner | Date: 7/17/2023 |
| | |
| Signature: | Signature: |
| Printed Name: | Printed Name: |
| Title: | Date: |
| | |
| Signature: | Signature: |
| Printed Name: | Printed Name: |
| Title: | Date: |

13

**MicroAdvance Funding, LLC**

FEE ADDENDUM TO AGREEMENT TO PURCHASE AND SELL FUTURE RECEIPTS

ALL FUNDINGS Up To $7,500.00
**Origination Fee: $750.00 -** One-time fee to cover the costs for underwriting, sale processing expenses, ACH Processing Fee, ACH Funding Fee and UCC filing fees.

ALL FUNDINGS $7,501.00 To $10,000.00:
**Origination Fee: $850.00 -** One-time fee to cover the costs for underwriting, sale processing expenses, ACH Processing Fee, ACH Funding Fee and UCC filing fees.

ALL FUNDINGS $10,001.00 To $25,000.00:
**Origination Fee: $1,050.00 –** One-time fee to cover the costs for underwriting, sale processing expenses, ACH Processing Fee, ACH Funding Fee and UCC filing fees.

ALL FUNDINGS $25,001.00 To $50,000.00:
**Origination Fee: $1,550.00 –** One-time fee to cover the costs for underwriting, sale processing expenses, ACH Processing Fee, ACH Funding Fee and UCC filing fees.

ALL FUNDINGS $50,001.00 To $100,000.00:
**Origination Fee: $2,150.00 -** One-time fee to cover the costs for underwriting, sale processing expenses, ACH Processing Fee, ACH Funding Fee and UCC filing fees.

ALL FUNDINGS $100,001.00 & ABOVE:
**Origination Fee:** One-time fee, equal to **Two and a half (2.50) Percent** of the Purchase Price, to cover the costs for underwriting, sale processing expenses, ACH processing Fee, ACH Funding Fee and UCC Filing Fees.

**FEES WHICH MAY APPLY:**
**Administrative Fee:** The fee applied to an account when the terms are modified based on affordability, not a loss in revenue.

**Bank Change Fee:** For each change of account requested, account may only be changed to another commercial checking account in the name of the business funded. **$100.00**

**Default Fee:** Any default of the Agreement including but not limited to: Block On Account, Unauthorized transactions, Rejected/Revoked ACH, and uncollectable NSFs.. Default fee in an amount equal to **Twenty (20%) Percent** of the outstanding undelivered Purchased Amount or $2,000.00, whichever is greater.

**NSF Fee:** Fee per NSF is **$35.00** or maximum amount allowed by law.

**Processor Change Fee:** In the event that Merchant, uses multiple card processing terminals; changes its card processor; or directs Processor to deliver settlement to any other account without the prior written consent of MicroAdvance the fee is **Five Hundred ($500.00) Dollars.** In the event the Merchant fails to cure the block within **three (3)** business days the account will be in Default and the Default Fee shall also apply.

**Third Party Collection Fees**. A fee equal to 20% of the balance due at the time of default will be added to the balance when a defaulted account is sent to a collection agency.

**Business Name:** GANNETT PEAK, LLC

| Signature: #1 | DocuSigned by: Mark Petri —B711ECA81D7C427... |
|---|---|
| Signature: #2 | |
| Signature: #3 | |